959 So.2d 109 (2006)
Charles Scott KELLEY
v.
Sabrina Renee Patton KELLEY
Sabrina Renee Patton Kelley
v.
Charles Scott Kelley
Kelley Foods of Alabama, Inc., Charles E. Kelley, Dwight W. Kelley, Jerry W. Kelley, and Edwin B. Kelley, attempted intervenors
v.
In re Marriage of Charles Scott Kelley and Sabrina Renee Patton Kelley.
2040581, 2040586.
Court of Civil Appeals of Alabama.
September 22, 2006.
Rehearing Denied December 1, 2006.
M. Chad Tindol of Marsh, Cotter & Tindol, LLP, Enterprise, for appellants Kelley Foods and other Kelley Shareholders.
*110 Sharon G. Yates, Montgomery; Terry L. Butts, Elba; and L. Merrill Shirley, Elba, for Charles Scott Kelley.
John A. Henig, Jr., and J. David Martin of Copeland, Franco, Screws & Gill, P.A., Montgomery; and Lee A. McIver, Montgomery, for appellee/cross-appellant Sabrina Renee Patton Kelley.
PER CURIAM.
In case number 2040581, Charles Scott Kelley ("the husband") appeals a divorce judgment insofar as it required him either to transfer 300 shares of stock in Kelley Foods of Alabama, Inc. ("Kelley Foods"), to Sabrina Renee Patton Kelley ("the wife") or to pay $350,000 to the wife within 60 days. Also in case number 2040581, the wife cross-appeals the divorce judgment insofar as it awarded the husband his entire retirement account instead of awarding her one-half of the account. We reverse the divorce judgment insofar as it divided the parties' marital property and made an award of periodic alimony, and we remand the case to the trial court for the trial court to address the issues of the division of the parties' marital property and the award of periodic alimony in light of this opinion.
In case number 2040586, Charles E. Kelley, Dwight W. Kelley, Jerry W. Kelley, and Edwin B. Kelley (collectively "the other shareholders") and Kelley Foods appeal the denial of their motion for leave to intervene in the husband's and the wife's divorce action. We affirm the denial of that motion.
On June 16, 2003, the husband sued the wife for a divorce on the grounds of incompatibility and irretrievable breakdown of the marriage. The wife answered the husband's complaint and counterclaimed for a divorce on the ground that the husband had allegedly engaged in domestic violence.
The husband owned 789 shares of stock in Kelley Foods, a closely held corporation. The husband's 789 shares represented approximately 15% of the outstanding shares of Kelley Foods. The other shareholders owned all of the other outstanding shares of Kelley Foods. The husband used marital assets to buy the 789 shares, and he conceded that the 789 shares were marital assets.
In 2001, the husband, the wife, the other shareholders, and the spouses of the other shareholders signed a buy-sell agreement that governed the transfer of shares of stock in Kelley Foods. In pertinent part, the buy-sell agreement stated:
"RECITALS:
". . . .
"C. Kelley Foods and [the husband and the other shareholders] wish to restrict ownership of the [stock in Kelley Foods] to [the husband and the other shareholders] and to persons with whom [the husband and the other shareholders] may comfortably and easily deal; and
"D. [The husband and the other shareholders] believe that they shall be able to deal easily and comfortably with each other and that it is in their best interests and in Kelley Foods' best interests that all corporate activities be controlled by persons who deal comfortably with each other; and
"E. [The husband, the other shareholders,] and Kelley Foods, to accomplish these objectives, wish to arrange for certain restrictions on the Transfer (defined below) of the [husband's and the other shareholders'] shares of the Stock to persons other than [the husband and the other shareholders].

*111 "AGREEMENTS:
SECTION 1
Stock Transfers
". . . .
"1.4 Involuntary Lifetime Transfers. Purchase Options. Any Shareholder who has any information that would reasonably lead him, her, or it to expect that an Involuntary Lifetime Transfer (defined below) is foreseeable must promptly send a notice to Kelley Foods and to the other Shareholders and be deemed to have offered to sell to Kelley Foods and to the other Shareholders his, her, or its shares of the Stock otherwise to be Transferred, at the Agreement Price and on the Agreement Terms. Such notice shall include a statement of the type of proposed Transfer, the name, address (both home and office), and business or occupation of the person to whom such shares of the Stock would be Transferred, and any other facts that are or would reasonably be deemed material to the proposed Transfer.
"1.4.1. Kelley Foods shall have sixty (60) days from such notice in which to elect to buy all, or any, of the Offered Stock.
"1.4.2. If Kelley Foods shall not elect to buy all of the Offered Stock within the option period, the other Shareholders shall have sixty (60) days from the expiration of the option period in which to elect to buy. The other Shareholders may elect to buy all or any of such shares of the Offered Stock in proportion to their respective ownership of the Stock (excluding the Offered Stock) or in such other proportion as they shall agree upon.
"1.4.3. If Kelley Foods and the other Shareholders do not, in the aggregate, agree to buy all of the Offered Stock within the option period, such Involuntary Lifetime Transfer may be completed with respect to the unpurchased shares. . . .
". . . .
"SECTION 2
Agreement Price
"The Agreement Price shall be the value of the Offered Stock as determined by formula provided in Section 2.1 on the last day of the fiscal year most recently ended prior to the date of any deemed offer. In the case of a transfer constituting a gift, the Agreement Price shall be the price set forth in 2.1.
". . . .
"SECTION 9
Definitions
". . . .
"`Agreement Price.' The `Agreement Price' is the price at which, pursuant to the terms of this Agreement, a Shareholder must offer to sell all or any of his or her shares of the Stock.
"9.17. `Transfer,' Etc. A `Transfer' is any sale, pledge, [e]ncumbrance, gift, bequest, or other transfer of any shares of the Stock, whether or not for value and whether or not made to another party to this Agreement.
"9.17.1 An `Involuntary Lifetime Transfer' is any Transfer made on account of a court order or otherwise by operation of law, including any Transfer incident to any divorce or marital property settlement or any Transfer pursuant to applicable community *112 property, quasi-community property or similar state law."
(Emphasis added.)
Following a trial at which it heard evidence ore tenus, the trial court entered a divorce judgment on January 14, 2005. The divorce judgment did not state any express fact findings. In pertinent part, the divorce judgment: (1) ordered the parties to sell the marital home, which had an equity of approximately $95,000, and to divide the net proceeds from the sale equally; (2) ordered the husband to pay the wife periodic alimony in the amount of $500 per month until the marital home was sold and, upon the sale of the home, to pay her periodic alimony in the amount of $1,250 per month; (3) awarded the wife 300 shares of stock in Kelley Foods and awarded the husband the remaining 489 shares, but gave the husband the option of paying the wife $350,000 (the "agreement price" of 300 shares under the buy-sell agreement) in lieu of the 300 shares; (4) awarded the wife $29,700 of the parties' cash and awarded the husband $24,300 of the parties' cash; (5) awarded the wife her retirement account, which had a value of $12,379, and awarded the husband his retirement account, which had a value of $185,777.64; (6) awarded the wife other personal property with a value of $50,625 and awarded the husband other personal property with a value of $27,300; and (7) ordered the husband to pay a $145,000 debt he had incurred to purchase the Kelley Foods stock.
Following the entry of the divorce judgment, both the husband and the wife filed postjudgment motions. On February 14, 2005, Kelley Foods and the other shareholders moved the trial court for leave to intervene. Immediately after entering the divorce judgment, the trial judge who had heard the evidence at the January 13, 2005, trial left office. After his successor in office recused himself, another trial judge denied all pending motions. Thereafter, the husband, the wife, Kelley Foods, and the other shareholders all timely appealed to this court.
On appeal, the husband first argues that the trial court erred by making an in-kind award to the wife of shares of stock in Kelley Foods because: (1) Kelley Foods is a closely held corporation; and (2) the husband and the other shareholders had sought in the buy-sell agreement to limit the transfer of stock in Kelley Foods to the husband and the other shareholders. Second, he argues that the trial court erred by ordering that, if the husband elected to pay the wife cash in lieu of the 300 shares of stock in Kelley Foods that the trial court had awarded her, he would have to pay her the agreement price of the 300 shares because, he says, his two expert witnesses gave undisputed testimony indicating that the agreement price did not represent the actual value of the 300 shares. Third, the husband argues that the trial court's division of marital property was inequitable because, he says, it will result in his having only $652.11 per month to live on.
With respect to the husband's first argument, we conclude that the trial court did not err in making an in-kind award of the 300 shares to the wife. The buy-sell agreement contemplates that in-kind awards of stock in Kelley Foods may be made, and it provides that, if an in-kind award of shares owned by the husband is made to the wife in a divorce judgment, Kelley Foods and the other shareholders shall have a right to purchase the shares before they are transferred to the wife. The wife would then receive the purchase price paid by Kelley Foods or the other shareholders in lieu of the in-kind award of the stock.
*113 Although we conclude that the trial court did not err in making an in-kind award of stock to the wife, we conclude that the trial court did err in failing to order that Kelley Foods and the other shareholders be accorded their right to purchase the shares awarded to the wife as provided in the buy-sell agreement. Furthermore, the trial court's error in failing to order that Kelley Foods and the other shareholders be accorded their right to purchase the shares awarded to the wife as provided in the buy-sell agreement requires that we reverse the trial court's division of the parties' marital property in its entirety. Moreover, because the award of periodic alimony is interrelated with the division of marital property, we also reverse the trial court's award of periodic alimony, see, e.g., Chambers v. Chambers, 823 So.2d 709, 716 (Ala.Civ.App. 2001), and remand the case so that the trial court may consider the interrelated issues of the division of the parties' marital property and the award of periodic alimony together in light of this opinion.[1] Because we are remanding this case to the trial court to reconsider the division of the parties' martial property and the award of periodic alimony, we pretermit discussion of the husband's second and third arguments on appeal as well as the wife's argument on cross-appeal regarding the division of the husband's retirement account.
In case number 2040586, Kelley Foods and the other shareholders argue that the trial court erred in denying their motion for leave to intervene because, they say, the trial court's awarding the wife 300 shares of stock in Kelley Foods impaired their rights under the buy-sell agreement. Rule 24(a)(2), Ala. R. Civ. P., states:
"(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
(Emphasis added.) Both in the trial court and on appeal, the husband, who is both a shareholder of Kelley Foods and a party to the buy-sell agreement, opposed the trial court's making an in-kind award of stock in Kelley Foods to the wife. Consequently, the interests of Kelley Foods and the other shareholders were adequately represented by the husband. Therefore, the trial court did not err in denying the motion for leave to intervene filed by Kelley Foods and the other shareholders.
In case number 2040581, we reverse the divorce judgment insofar as it divided the parties' marital property and awarded the wife periodic alimony, and we remand the case so that the trial court may consider the interrelated issues of the division of the parties' marital property and the award of periodic alimony together in light of this opinion. In case number 2040586, we affirm the denial of the motion for leave to intervene filed by Kelley Foods and the other shareholders.
2040581REVERSED AND REMANDED WITH INSTRUCTIONS.
2040586AFFIRMED.
THOMPSON and BRYAN, JJ., concur.
*114 MURDOCK, J., concurs in the result, without writing.
CRAWLEY, P.J., concurs in part and dissents in part, with writing.
PITTMAN, J., recuses himself.
CRAWLEY, Presiding Judge, concurring in part and dissenting in part.
I concur with the main opinion insofar as it affirms the trial court's denial of Kelley Foods and the other shareholder's motion to intervene in case number 2040586.
I dissent from the main opinion insofar as it reverses the trial court's judgment as to the division of the parties' marital property and the award of periodic alimony and remands the case to the trial court on the basis that the trial court failed to provide that the award to the wife of the 300 shares of stock in Kelley Foods was subject to the provisions of the buy-sell agreement. Simply put, I think a reversal is unnecessary. The trial court's judgment does not mandate that the husband give the wife shares of stock in Kelley Foods; in fact, the judgment gives the husband the option of paying money to the wife in lieu of giving her the stocks. Furthermore, the husband is bound by his own agreement to offer to sell the stock to Kelley Foods or the other shareholders. The trial court's judgment does not change that fact. Finally, it appears that Kelley Foods and the other shareholders have remedies available to them in the event the husband elects to not first offer to sell the stock in accordance with the provisions of the buy-sell agreement. See Boyle v. Boyle, 194 W.Va. 124, 459 S.E.2d 401 (1995)(stating that one reason supporting the denial of a motion to intervene in a divorce case by the holder of an option to buy stock was the existence of other adequate methods to protect his interests, such as several other pending lawsuits).
NOTES
[1] Although the trial court's in-kind award of stock in Kelley Foods to the wife was not error, we note that the wife would probably be better served by an award of other marital property or periodic alimony in lieu of the stock because of the disadvantages that would result from being an unwelcome minority stockholder in a closely-held corporation.